Yes, Your Honor. May it please the Court, my name is Beau Brindley, and I represent the defendant appellant Deshonte Dickson. The issue I'd first like to discuss this morning is the above-guideline sentence imposed on Mr. Dickson by the District Court. At sentencing, the District Court issued a procedurally deficient and substantively unreasonable sentence for a couple of essential reasons. The first and most important is that at the of the pre-sentence investigation report. And in that pre-sentence investigation report, the report set forth all of the facts regarding other possible drug transactions that could be attributed to Mr. Dickson and made a determination that they were not applicable. In fact, finding that certain packages were sent by other people, Curry and Taylor, rather than Mr. Dickson. And the Court endorsed and accepted all of that, along with endorsing and accepting the pre-sentence report's finding that there were no facts upon which an enhancement for management could be done. How long before trial was the PSR done? After trial? No. How long before the trial was held was the PSR written? The pre-sentence, I'm sorry, I said pre-sentence. I'm talking about the report created by the pre-sentence report. It's done after the trial. I'm sorry. I said the wrong word. Before sentencing. You're right. How long before the IPO? How long before the sentencing? It was a few months before the sentencing, certainly. I don't remember the exact timeline on that. I could check that for you. Okay. No, no. Okay. And then we had a full trial here, right? Yes. Are you trying to say the PSR is more important than the trial? No. I'm trying to say that the PSR evaluated the facts from the trial. And the PSR said explicitly The question was how long before the trial was the PSR. I said I don't know the exact. It was months before, but I don't know the exact. Before the trial or before the sentencing? No, no, no. Before the sentencing. That's where the confusion was. Yeah. You didn't It's before the sentencing. We had a How do we know whether the judge was correct in the guideline calculations or in the variance findings? Well, that's the problem. We don't. And that's the difficulty here. So you're not necessarily entitled to the guideline sentence, then. You just want a further explanation? Yes. Either one You're not arguing that Okay. So that's what you want. Is there some further explanation from the judge as to which Yes, Judge. We need a remand so that the judge can explain either, one, he was wrong when he endorsed the guidelines because the facts in the guidelines, the facts in the pre-sentence report were directly contradictory to what he said his basis for the sentence was. On what point? Well, particularly, he identified and said he was sentencing Mr. Dixon to enhanced sentence for seven packages sent to Zachariah Bolter. Those seven packages were evaluated in the pre-sentence report, and they said that the seven packages were explicitly sent by Curry and Taylor, not attributable to Bolter. Well, not attributable. I don't know who said that. It didn't count them. It did not count them, and it explicitly said Curry and Taylor sent the package. Yeah, but your man could still be attributable under 1B1.3. He could, but neither the guidelines didn't find that, or I'm sorry, the pre-sentence report didn't find that, and the judge did not say, well, the guidelines are insufficient, they're wrong. Why don't you ask for a further explanation? The judge was When, after the Not only that, the judge, I asked the judge whether or not we could be allowed additional briefing on the issue because we believed that everybody agreed with the facts and the guidelines. Because in the pre-sentence report, the government agreed, the court endorsed it, and so we were never given an opportunity to argue the facts that the court was interested in. And then I asked at the end of the sentencing, after he transcript page that you're aware you preserved what I consider necessary to preserve a complaint about lack of adequate explanation? It is cited in the brief. If I could have just a moment, I can find it for you. Well, it's page 29 of the transcript, I think, where you made your objection. Yes. Whether it's what judge Yes. You might want to address what the objection really raised, but you said, this is an unusual circumstance in which the court has issued a sentence that's well above the guideline range without the request of the government, and I believe that under that circumstance, the defense should be given the opportunity to make additional comment, additional filings with respect to the question of the above guideline sentence. Yes. Is that the objection you're raising? Yes. Yes. Because the court, we had no notice that we were going to be dealing with a management issue, which he said summarily in the opposing sentence he was considering, which he endorsed the PSR that said it didn't apply, and he said he was sentencing based on 17 packages that were never found to have any drugs in them. The pre-sentence report didn't find any drug quantity for those. Those are just 17 packages we know were sent, but not what was in them or who was sending them, in fact. I mean, there's a speculation one can make. I acknowledge that. But I think one of the other defendants was held accountable for them, wasn't he? Yes. One of the defendants that I think admitted accountability for it. One of the co-conspirators. Yes. Yes. So you could see a path to saying your man is accountable for this. If there was further evidence cited by somebody to indicate why. The Court gave us no basis for it. Well, counsel, now wait. Now, of course, I'm behind all of you. But the Court said in response to you, I base my variance on the factors and the testimony and trial that I attended and listened to carefully. So can we find it in the trial? That's what I was trying to ask earlier. It's not in the trial. No. If you go back to the trial's transcript, you won't find it, which is why the pre-sentence report said that they couldn't find it. Find what? Find what? Find that these packages were somehow attributable to Mr. Dixon or that he had any connection to them. That's not necessary for a variance. I didn't understand, Judge. What was your question? I mean, you're trying to drag this into the clearly established, relying on facts that were not clearly established, right? That's the procedural error you're looking to hang on to. Yes. Because otherwise, a district court is not restricted to drug quantity findings or attribution in the PSR in the variance evaluation under 3553A. No. You are correct. However, the problem here isn't just that he found facts that are not supported by the trial, although that's a problem. The problem is he endorsed the pre-sentence report that said one thing about some of this evidence and some of these packages, and then he seemed to say the opposite without explanation. What case says that's procedural error? There's no case that has that particular set of facts. But, you know, lawyers, defense lawyers, right, and I understandably want to get everything under procedural error. Well, even the standard of review is otherwise so unfavorable, but you have to have a procedural error precedent. The case law indicates that you have a procedural error when the court bases the sentence on erroneous fact findings. And either one You just said you're not relying on clearly erroneous findings. You're relying on Well, we believe we are. It doesn't, to me, fit under our categories of procedural error. We are arguing that they're clearly erroneous because there's no factual support for them anywhere. And we are arguing that it's a different situation because But you didn't ask for better findings. That was We asked for the opportunity You asked for an opportunity to brief and argue and so forth. Right. Because we're entitled. Another procedure we're entitled to, Your Honor, is the procedure that we have to be every issue that's going to be important to the sentencing. And we Give me the Eighth Circuit case you're citing, Your Honor. Well, I can cite you the sentencing guidelines themselves make that, set that forth. Your Honor. Just one moment, Your Honor. I'm trying to get you an exact citation. It's probably in 1B1 somewhere. It is. Okay. Well, that's a general policy pronouncement. You know, if you hadn't put all this under the label of procedural error. Well, we argued both You could argue all this and we could address it. We argued substantive unreasonableness as well. I mean, but the other issue here is the judge made, and I will come, if I can't find it now, I'm going to come back when I hit my rebuttal time, I'll get you the citations. But the judge made a statement that part of this was based on some concern about the sentence received by the other defendants who both cooperated. And so he needed to get way more time. One of the two guys that he mentioned was Taylor. Taylor did not cooperate. He said that he did. That was cleared up, though, wasn't it? The government told him after he sentenced Mr. Dixon that Taylor was, did not cooperate. And all the judge said at that point was that he had already made his decision about sentencing. So that's a problem. He said his sentence was based on a fact that wasn't true, was told it wasn't true, and then didn't explain for us why his sentence was still right if that fact he said was a basis wasn't true. We need a remand so these matters can be cleared up. So we can determine if his calculation of the agreement with the pre-sentence report was wrong in his view, and it appears it was, because he said he should be, get an enhancement for management. They said he shouldn't. Or if the factual findings he made after the fact were wrong. But we should be entitled to a remand so we can have that matter cleared up and we can get a sentence in which we're able to actually address. I don't under, if the court, if the court's analysis of the 30, application of the 3553A factors to these facts is established by trial, and as to the extent the PSR addressed them, if all of that, if all of that is adequate under our subject substantive unreasonableness authorities. I don't understand what else we have to look at here. Why do we need a remand? Because you can't have a sentence that's substantively reasonable that, one, is based on a fact that's proven false at the sentencing and the court doesn't give any explanation for how that's okay. That wasn't preserved. It wasn't preserved. The government corrected it right then. Well, you don't need findings to do a variance. You have to have factual findings to have a variance. You can't vary for whatever. What case says that? What the cases say pretty clearly, all of the cases, for that matter, say that if you're going to have a variance, you have to provide a reasonable basis. That's different than findings. Okay. But if you're relying on a fact that's false, it's not a reasonable basis. And I think you have a substantively unreasonable sentence any time your endorsement of the pre-sentence investigation report and the facts in it is contradicted by factual claims you summarily make afterwards. All right. And we should be agreeing. There are many cases on that proposition. Judge, if I could reserve the remainder of my time. Well, I mean, I didn't see that briefed that way. If I could reserve the remainder of my time for rebuttal, Judge, and I will take a quick look and see if I can give you those sites in rebuttal. Thank you. Mr. O'Connick. May it please the Court. Opposing counsel. Good morning. My name is Jonathan O'Connick, and I represent the Appellee, the United States, the District of North Dakota United States Attorney's Office. I briefly want to discuss the issue of the sufficiency of the evidence introduced at trial. Why don't you start with the sentence? Yes, Your Honor. Since that was briefed by Mr. Brinley, I believe that what's important in this case You just reopened it. You just opened it up for rebuttal. Unless you want to talk about it, that's fine. Yes, Your Honor. Then we'll give him more time, and we'll have a second argument about the sufficiency. Your Honor, I would just then talk about the actual sentencing hearing and whether or not there was procedural error or a substantive unreasonableness of the sentence. I would note that in this particular case, the important thing for the Court to consider are the standards of review. When we're dealing with the procedural error, there has to be a de novo review, and we look at the findings of fact for clear error. In this particular case, there was no error for findings of fact because the Court reviewed and applied the 3553A factors. I think that's what is key here. The guideline range that's agreed upon by the parties is not binding upon the Court. It's not binding on the Court if the Court says that's an incorrect guideline range. Correct. And you really should have been held accountable for the 17 packages, even though the government, for whatever reason, is burying it. And you should have had a leadership role enhancement, even though the government, for whatever reason, is agreeing to zero. And he could have increased the guideline range, even though the government was not arguing for it. Yes, Your Honor. But that would not have been. But the problem here is whether he can say, I find that you have zero, no aggravating role in the offense, and then say, but I'm going to give you an upward variance because you were a manager supervisor. Your Honor, I believe. How is that permissible? It's permissible because under the procedural error, I don't believe that that is procedural error for the Court to apply factors as a 3553A factor that weren't contemplated in the PSR. Forget whether it's procedural error. Yes, sir. Why is that a reasonable basis for the sentence? I believe it's reasonable based upon the Court's application of the 3553A factors based upon what the Court reviewed, not just in the PSR, but also at trial. Okay. But where in the record, trial or otherwise, did the Court get a sufficient basis to ignore the range that the government was supporting? I believe that there is ample citation in the trial transcript to the fact that the defendant, or the appellant in this case, was an individual who had. Where? Your Honor, it would be in the. The sites. Your Honor, it would be in the testimony of Mr. Bolter. I apologize as I. Why shouldn't the defendant have an opportunity to litigate this? You don't even, you can't even cite where it is in the record, and the judge is just saying at the hearing off the cuff, well, there's 17 packages, and therefore I'm going to give you a big upward variance. Why shouldn't that be the subject of findings? Your Honor, that is an excellent question. When it comes down to the citations, I'm looking at transcript volume 1, pages 23 to 27, when we're talking about Zachariah Bolter's package. The United States and the defendant had essentially agreed that that was the basis for the guideline range for why the drug quantities would be that amount. You agreed that the guy would only be accountable for one package, even though he was in this big conspiracy. Your Honor, I believe. Why would the government agree to that? Well, based upon the jury's finding of a between 50 grams to 500 grams, we surmised that that was possibly the reason that the court had or the jury had made that compromise. Why they had determined why this evidence would be applicable to the defendant when we have 310 grams of methamphetamine. That would be within the 50 grams to 500 grams. Now, the testimony of Mr. Hollingshead established additional packages that the court could consider. And I believe in looking at the records specifically. So you're saying you thought the jury rejected the higher quantity, and that's why you agreed to the lower quantity, but then the judge applied the higher quantity anyway on his own motion? I believe so, Your Honor. I believe that's one factor in addition to the fact that as looking at the transcript, pages 189 to 288, specifically really looking at pages 202 and 03, we're looking at a situation where the court is considering Mr. Hollingshead's testimony that there were, I believe, two meetings with Mr. Hollingshead and Mr. Dixon where Mr. Hollingshead was fronted drugs, which would demonstrate that that's not, in fact, any user quantities. We're talking about he's getting a couple of ounces of methamphetamines to then go and sell, get the payment for those drugs, pay back Mr. Dixon. Thereafter, there were three packages that were sent from Mr. Hollingshead to Mr. Dixon. Those also contained sufficient quantities, a few ounces of methamphetamine, heroin and or pills. All of that could be a basis why the court would decide to vary upwards. Now why wasn't it in the guideline range then? Your Honor, I can't speak to all of the reasons why the PSR writer would not include those. But I can speak to the fact that the PSR writer was not the one who was in the  I mean, that's not the case. The fact that the jury found the defendant guilty of was between 50 and 500 grams based upon the package that was in hand with Mr. Bolter. However, I – the court is not bound by my recommendation. They're able to assess the situation differently. And in this particular case – But can the judge do that through a variance if he's already found that he agrees with you in the guideline range? I believe that he can by applying the 3553A factors in his own method. And I think – Maybe. The problem is it's internally inconsistent to say I find that you're accountable for 300 grams and then I'm giving you an upward variance because I find you're accountable for 2 kilograms or whatever. And while it may be inconsistent in some ways, I don't believe it's legally inconsistent with this Court's precedent. I don't believe that there's anything that bars the Court from considering this is what the parties have maybe agreed to. One thing that comes to mind is your argument makes it sound like the variance is based on a different standard of proof for sentencing and trial. Now, that, it seems to me, if the district court was basing this on findings by the preponderance inconsistent with the jury's verdict, that, it seems to me, is something that maybe needs a hearing. Your Honor, I believe this is something that was not addressed by the appellant at before the district court. This was not addressed about whether the court was considering certain quantities. Well, they asked for a hearing. They asked. Because the judge just brought it up at the end and said I'm tagging you for the 17 packages. And he said, wait a minute, I want to be heard on that. I believe that that colloquy was in reference to a departure. I think that their request was, we want a brief because you are departing and the court said, no, I am varying. Well, he was trying to get around the rule of criminal procedure. But Irizarry, even Irizarry, doesn't it say that if it's a surprise situation that for a variance there should be notice? I don't. And wouldn't this be a surprise if you're varying based on findings that are contrary to findings that were just made five minutes ago in the guideline range? I think that the findings aren't contrary to the guideline range. I believe the court's application of the 3553A factors were in some ways overlapping the guidelines, but in also they're separate in the sense that we have a situation where we are looking at a defendant who's bringing or arranging for drugs to come into North Dakota by renting vehicles. He's responsible for directing people to do that. He is submitting quantities of drugs that may have been considered by the jury at trial, but the court can certainly consider those packages that Mr. Hollingshead describes. We also can consider the fact that there were approximately 310 ounces of drugs that were found actually in a UPS, USPS shipment. Was that all jury, I mean, trial evidence, the Hollingshead testimony? Yes, sir. All of this was absolute trial attestment. So you're saying you think the jury did not find those, and that's why you didn't urge them? It's a very slippery slope to go into what the jury was thinking. Obviously, we did not ask them, and in some ways it's not pertinent to what they were thinking. In my view, as a representative of the United States, I believe that that was what kind of justified why they would make a lower argument. Well, has the government abandoned the view that sentencing is based on a preponderance and, therefore, quantities can be counted even if a jury doesn't find them? We have not, Your Honor. We believe that — Then why did you just say the reason you agreed to this quantity is the jury verdict? Because that's — I wanted to be honest with the Court as to why the PSR, the United States, agreed to the quantities that it did. Because I think in fairness to the Court, it should understand that information that went into the United States — But I thought you just said you haven't abandoned the view that preponderance is enough at sentencing. No. We do believe that preponderance is enough. But in terms of that's enough for the Court to make that decision. The United States' position with the defense is separate and apart from what the district court decides to do. Our position is that there was a preponderance of the evidence to support it. But in fairness — But you're not going to argue for it. We weren't arguing for it, yes. You're going to say even though the evidence supports this quantity, we're going to argue against it. Yes. I would say we're going to argue for an interpretation — How is that a principled position? It is not your principled position, Your Honor. That is, it is a position that — It's an unprincipled position? No, Your Honor. Why are you taking it, then? I don't understand the government's whole approach to this case. We took it because we were trying to be fair to the defendant. We wanted to hold him accountable. Well, it sounds like you've abandoned the view that acquitted conduct can be counted. No, Your Honor. We have not abandoned that. I believe it's separate and apart. Oftentimes, the United States will engage in pleading negotiations with defendants where we agree to lesser quantities. Do you often agree, even though we know there's two kilograms, we'll give you only one kilogram here? I — Can you tell the Court that that's the appropriate quantity? We will say that we believe as the parties that the defendant is only responsible for this amount. We can't bind the district court as to what they believe through relevant conduct when we want to — It sounds like you're saying we agree to it not because it's true, but because you want to cut a deal. No. No, Your Honor. I think in this particular case, if I could sum as to why the United States took the position that it did, it wanted to address the reason why the jury made the decision that it did, and it was trying to be reasonable with its approach to say, because they made a — Is there a challenge to the verdict? No. There has been a challenge to the verdict, and there has been a challenge in the verdict of guilt, Your Honor, however — per the brief that the appellant has filed. However, in terms of this particular matter, I think what's most important to consider for this Court is that the district court is separate and apart from the United States. The district court is able, through the 3553a factors, to make a determination whether or not a variance is appropriate. If it does that, everything is handled through looking at hubs, which I believe this Court has described as giving wide latitude if the Court is applying the 3553a factors. The Johnson court, the district court, I believe, varied upward 133 months. And in this case, I'm not trying to compare apples and oranges, but varying up 42 months is much less. And the — this Court has held that that was not a substantially unreasonable sentence. And the Court made similar findings in Johnson by stating the individual was bringing drugs into, you know, that particular State. In this case, the Court is considering that factor. That factor alone, that the defendant is bringing drugs into the — to the District of North Dakota, could be enough for him to make that variance. And I don't believe there's any case law that would say otherwise, that that would make a substantially unreasonable sentence. Now, the district court, in terms of a procedural error, provided the parties with information at the time of sentencing that, I'm considering your views. However, I disagree with it. And so I would just — I would say that we are not abandoning any principle that we — that other relevant conduct could be proved by preponderance of the evidence. That is not our position here. I was just trying to give information as to why the United States agreed to the calculations in the guideline range. And ultimately, the United States and the district court are separate entities. And the district court, through its own adroit reasoning, determined that that deserved a variance based upon the appellant traveling in interstate, arranging for individuals to bring drugs into the community, arranging others, being a manager and leader, so to speak. And I believe that all of those factors are important for the Court to consider because, in previous cases, those factors in and of themselves were not held to be an unreasonable sentence. And for that reason, I believe that this Court should affirm the judgment. And ultimately, those are the only points I had to make, pending your questions. Thank you. Are you familiar at all with the case called U.S. v. Brown from 2006? I don't think it was in the briefs, but it has to do with an arguably similar situation involvement? No? No, Your Honor. I apologize. No. Gentlemen, thank you for your time. And I'd ask that this Court affirm the judgment. Thank you. Thank you. May I proceed, Your Honor? Please. Section 6A.1.3 of the United States Sentencing Guidelines, that's Section 6A.1.3, provides that the parties shall be given adequate opportunity to present information regarding any factor important to the sentencing determination. And that is what was missing here in large part. We went into the sentencing believing no one had a disagreement about what he was responsible in terms of quantity or leadership. Government didn't. Pre-sentence report didn't. Court adopted the pre-sentence report. And then we thought, okay, we're all in agreement. We're fighting about 63 to 78. But if you got a windfall in the guidelines, you're not saying on remand, if you get one, that the judge would be foreclosed from making findings on these issues. No. I think he needs to make clear findings. Is he finding by preponderance different than the jury? Is he what facts? He needs, other than summarily saying it at the last minute without me being able to comment and then saying, no, you can't comment, I want to be able to address it. If he wants to make those findings, I want to be able to have a fight about it, and I want to be able to have a clearly articulated response based on the evidence it was a trial. Yeah. We didn't get that opportunity. All right. But if it's in the trial record, you wouldn't need a whole new evidentiary hearing. You'd want argument on whether this evidence supports a quantity attribution and so forth. Yes. We want a remand for resentencing based on the record we had. The trial, we don't need evidence. We need the trial record, the pre-sentence report, and the judge, and we'll go through it now knowing that there's an issue there. And if he's going to make alternative findings, he needs to make real alternative findings. And we have to have the opportunity to argue them and disagree or explain why we think he's wrong. We didn't get that chance because no one gave us any notice those things were going to be an issue. If there are no other questions, I have exhausted my time, and I thank you all. Very good. Thank you, counsel. Thank you all.